1999 ND 128

**Curtis ROMANYSHYN, Plaintiff and Appellee,**

**v.**

**Thomas W. FREDERICKS, Defendant and Appellant.**

**No. 980366.**

Supreme Court of North Dakota.

July 13, 1999.

Ralph A. Vinje, Vinje Law Firm, Bismarck, for plaintiff and appellee. Submitted on brief.

Ronald A. Reichert, Reichert & Herauf, P.C., Dickinson, for defendant and appellant. Submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Thomas W. Fredericks appealed from a judgment awarding him $5,000 from Curtis Romanyshyn and ordering the return of title to a motor vehicle to Romanyshyn. We affirm.

[¶ 2] In September 1983 Fredericks orally agreed to purchase a 1963 corvette from Romanyshyn. Fredericks paid Romanyshyn $5,000 for the vehicle, and in November 1983, Romanyshyn signed a motor vehicle certificate of title which indicated the vehicle had been transferred to Fredericks. According to Fredericks, the purchase price included a standard corvette engine to replace a "souped up" engine that was in the vehicle when he test drove it. According to Romanyshyn, the purchase price did not include an engine, and he prepared a written estimate for the cost of restoring the vehicle, including installing a standard corvette engine. Further, according to Romanyshyn, Fredericks agreed to send Romanyshyn money for the restoration process, but Fredericks never forwarded Romanyshyn any money and the vehicle remained in a storage shed on Romanyshyn's property.

[¶ 3] In 1994 Romanyshyn sued Fredericks for $7,654 for storage costs of the vehicle.[1] Fredericks denied liability for the storage costs and counterclaimed for breach of contract. The trial court's writ-ten findings state it found there was no valid contract between the parties; Romanyshyn was entitled to storage fees for the vehicle; Fredericks was entitled to interest on the $5,000 purchase price paid to Romanyshyn; and the storage fees and the interest were offsetting. The court concluded Fredericks was entitled to repayment of the $5,000 upon return of title to the vehicle to Romanyshyn.

[¶ 4] Fredericks argues because the trial court decided there was no contract between the parties, he was entitled to return of the $5,000 purchase price plus interest from 1983, and Romanyshyn was not entitled to storage fees for a vehicle that was his property. Fredericks argues denying him interest on the $5,000 and awarding Romanyshyn storage fees unjustly enriched Romanyshyn.

[¶ 5] Rule 52(a), N.D.R.Civ.P., governs our review of this action. Under N.D.R.Civ.P. 52(a) we will not set aside a trial court's findings of fact unless they are clearly erroneous. *KAT Video Productions, Inc. v. KKCT–FM Radio*, 1998 ND 177, ¶ 6, 584 N.W.2d 844. A finding of fact is clearly erroneous if, although there is some evidence to support it, we are left with a definite and firm conviction the trial court has made a mistake, or if the finding is induced by an erroneous view of the law. *Id.* Questions of law, however, are fully reviewable on appeal. *State Farm Mut. Auto. Ins. Co. v. Estate of Gabel*, 539 N.W.2d 290, 292 (N.D.1995).

[¶ 6] The trial court's written findings, prepared by Fredericks' counsel, state the court found there was no contract between the parties, but awarded Romanyshyn storage fees for the vehicle. The court's written findings do not adequately explain its theory for awarding Romanyshyn storage fees for a vehicle that, under the finding of no contract, belonged to him.

---

1. Neither party raised the statute of limitations before this Court and we do not consid-er that issue.

The court's oral findings, however, may explain its written findings and satisfy the requirements of N.D.R.Civ.P. 52(a), especially when, in the interest of judicial economy, it would serve no useful purpose to remand for the preparation of more adequate findings. *See Tiokasin v. Haas,* 370 N.W.2d 559, 564 (N.D.1985).

[¶ 7] Here, the court stated from the bench:

Well, it's a fascinating situation, particularly because of the—neither party being very concerned about this deal. You know, $5,000, particularly in 1983, was a lot of money, it really was. When you factor in inflation, the inflation of the 80's, throughout the 80's, I don't know what it would be today, but I suppose it's the equivalent of 15,000 to $20,000 today. And these parties were so completely lackadaisical about the whole thing. It really puts the Court in a quandary as to what the agreement really was.

. . . .

Now here I just don't have sufficient reason to reject one of the parties' testimony and accept the other in either case. Instead, I conclude that these parties never had mutual consent as to the terms of the contract. They certainly did as to some of the terms. They agreed that the price of $5,000 would be reasonable but they each thought it was for another thing. And they failed to communicate their thoughts as to what the agreement really was. In other words, I find as a fact that the parties never reached a complete contract here, that all of the necessary terms of the contract were not agreed upon. There was no mutual consent and certainly not a mutual consent that was communicated by each to the other. That means that the contract, the portions of it that were completed need to be rescinded and the parties put back, restored to the status quo at the time of the beginning of the apparent contract, the one that each thought—the contract that each

thought they'd entered into. That means, ordinarily, that storage would need to be paid for the car and Mr. Romanyshyn would have to pay interest on the money. Fredericks would have to pay storage and Romanyshyn pay interest. Whatever the rate of storage would be, I think it's comparable to interest on the $5,000. Interest, for example, at six percent per year would be, what, $600 a year? That's somewhere near the $2 a day storage that was contemplated, particularly the quality of storage that we have here, unheated, and apparently not completely enclosed storage. Although the evidence on that is disputed also. Mr. Romanyshyn at least implied, or would want me to infer, that it was completely enclosed storage, but Mr. Fredericks says it clearly was not completely enclosed storage. So the value of the storage is roughly equivalent to the amount of the interest on the money. All money bears interest for its usage by another statu[t]e we have in North Dakota.

The net result is, I'm going to conclude that Mr. Romanyshyn must pay back the $5,000, in exchange for which he gets to keep the car and the engine. And the complaint then will be dismissed. The counterclaim will be granted to the extent that it seeks return of the $5,000, that's one of the requests for relief that Mr. Fredericks has in the numerous causes of action alleged in his counterclaim. And exercising equity, which is appropriate when rescission of a contract, which is an equitable remedy, neither will there be any interest to be paid by Mr. Romanyshyn or any storage to be paid by Mr. Fredericks. Neither side will have costs or disbursements. Instead, Mr. Fredericks will have judgment for the sum of $5,000, which after the date of entry of judgment will bear interest at the judgment rate of 12 percent in North Dakota.

[¶ 8] The court's oral findings are the parties did not reach a mutual under-

standing about whether an engine was included in the purchase price, but they did agree to other terms of the contract. The court found a partially completed contract with a mutual mistake about the engine. The court granted rescission of the completed part of the agreement and restored the parties to their 1983 status by awarding Romanyshyn storage costs and offsetting those costs with the interest on the $5,000 purchase price. The court effectively granted the parties equitable rescission of the contract under N.D.C.C. § 32-04-21, which incorporates by reference the statutory grounds for rescission at law under N.D.C.C. § 9-09-02(1), because it concluded the parties' consent to the agreement was given under a material mistake of fact about the engine and it restored the parties to their pre-contractual position. *See Barker v. Ness*, 1998 ND 223, ¶¶ 16, 25, 587 N.W.2d 183. *See generally* 17A Am.Jur.2d *Contracts* § 213 (1991). Fredericks effectively purchased the vehicle in 1983, but because of a mistake about the engine, the court rescinded the purchase agreement while offsetting the storage costs and the interest on the purchase price. The court's findings are adequate to understand and explain the basis for its decision, *see Fargo Foods v. Bernabucci*, 1999 ND 120, ¶ 17, and a remand is not necessary for the court to explain its rationale for awarding storage costs.

[¶ 9] Because Fredericks purchased the vehicle, Romanyshyn was deprived of its use and he was not entitled to dispose of it until the contract was rescinded. Although Fredericks argues there was no notice or evidence of an agreement for storage costs during this time, *see Sheyenne Valley Lumber Co. v. Nokleberg*, 319 N.W.2d 120, 125 (N.D.1982), Romanyshyn introduced evidence of a sign at the storage facility which indicated "storage after 30 days [was][$]2.00 [a] day." The court's award of storage costs is supported by the evidence and equitable principles regarding Romanyshyn's loss of use of the vehicle before the contract was rescinded. *See Heinsohn v. William Clairmont, Inc.*, 364 N.W.2d 511, 513 (N.D.1985) (explaining equitable principles govern rescission of a contract whether the object of a suit in equity or an action at law).

[¶ 10] We affirm the judgment. Costs for appeal are not awarded to either party.

[¶ 11] KAPSNER, MARING, NEUMANN and SANDSTROM, JJ., concur.